IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| RUBEN GUERRERO, #1635715 | § | |
| VS. | § | CIVIL ACTION NO. 9:11CV81 |
| WADE A. KING, JR., ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

Plaintiff Ruben Guerrero, proceeding *pro se* and *in forma pauperis*, a prisoner confined in the Texas prison system, filed this civil rights lawsuit under 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

## I.   FACTS

Plaintiff filed his original complaint on May 3, 2011. He alleges that on December 14, 2010, while he was incarcerated in the Eastham Unit of the Texas Department of Criminal Justice ("TDCJ"), his cellmate, a prisoner named Humphrey, assaulted him by surprise and without provocation. Correctional Officer Marcus D. Johnson, who is not named in this lawsuit as a defendant, stood by and watched the attack. His only intervention was to ask Humphrey if he was going to let Plaintiff up. Humphrey's response was "I'm going to lock up." At that point, Officer Johnson left, and returned several minutes later with additional help. By his return, however, the assault had ended and Plaintiff was left with injuries to his hand, arm, head and back. He was taken to medical, where he described the assault to Major Craig A. Fisher and other correctional officers in the area. Plaintiff alleges he was then harassed and blamed for causing a disruption. Major Fisher directed that Plaintiff "be locked up" and written a disciplinary case for fighting.

The subsequent disciplinary hearing on case number 20110107320 was conducted by Captain Wade A. King, Jr., the Disciplinary Hearing Officer. Plaintiff was represented by Substitute Counsel Jan M. Smith. During the hearing, Plaintiff remained silent but asked Ms. Smith to read a statement from the charging officer, Officer Johnson, that Plaintiff was not the aggressor in the fight and "had no choice in defending myself." Complaint at 5. Ms. Smith did so, but, Plaintiff alleges, did nothing else to defend him. He further alleges that Captain King found him guilty of the disciplinary infraction based on the charging officer's report and no evidence to refute the charge, despite Officer Johnson's statement that Plaintiff was defending himself.

Plaintiff alleges he filed a grievance, which was interpreted as an appeal of his disciplinary hearing conviction. However, investigating officer Major Tovi P. Butcher upheld the finding of guilty based on sufficient evidence to substantiate the finding. Plaintiff alleges he then filed a Step 2 grievance on January 14, 2011, in which he referenced two offender cases "to show prejudice and discrimination against offenders who do not, or cannot, work," Complaint at 6, as is his situation. He asserts that between the example of the two referenced cases and Officer Johnson's report, his disciplinary case was overturned on March 10, 2011.

Plaintiff therefore filed his complaint naming Captain King, Major Fisher, Major Butcher and Warden Gregory H. Oliver as Defendants over alleged violations of Plaintiff's Fourteenth Amendment due process rights and also naming Substitute Counsel Smith as a Defendant over an alleged violation of Plaintiff's Sixth Amendment right to effective assistance of counsel. He also asserts he should have been protected by the TDCJ "Safe Prisons" policy.

On September 22, 2011, the Court conducted an evidentiary hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which

2

the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Supervisor Ginger Lively, Warden Dwayne Dewberry and Nurse Kelly Maxwell testified under oath about prison policies and information contained in the Plaintiff's prison records.

At the *Spears* hearing, Plaintiff repeated the substance of his complaint. He more fully explained his cellmate, Humphrey's, assault on him. Plaintiff testified that Humphrey was a "psych patient" who directed his animosity toward Plaintiff but did not talk to Plaintiff. Both had been outside their cell waiting for the door to open when Humphrey attacked him from the side without warning and without a weapon. Officer Johnson approached the two and asked Humphrey to release Plaintiff, but Humphrey replied, "I'm going to lock up." That was when Officer Johnson left to get help. Other inmates tried to pull Humphrey off of Plaintiff twice, but Humphrey returned to attack him again. Plaintiff then hit Humphrey back. Officer Johnson returned in about 10 minutes with help, but the fight was over. The responding officers did not know who had been in the fight, but inmates pointed Plaintiff out and he was handcuffed and taken to medical along with Humphrey. After a medical examination, which revealed fight-related injuries including hit trauma and a strained back, Plaintiff explained the fight to the officers present, including Major Fisher. Photographs were taken and Plaintiff was then taken to pre-hearing detention. Plaintiff then repeated the claims in his complaint regarding the hearing, his representation at the hearing, and his grievance/appeals process leading to the disciplinary case being overturned.

He testified he is suing Captain King because he was the Disciplinary Hearing Officer who found him guilty despite Officer Johnson's report showing Plaintiff acted in self-defense. The case was graded as a major case, but only minor punishment was assigned. Plaintiff did not recall the

3

exact punishment but noted that he had already been classified at the lowest level and therefore could not be demoted in classification.

He further testified he is suing Major Fisher because he was at medical when Plaintiff was taken there after the fight and told him what happened, but he still instructed Officer Johnson to write a disciplinary case against him.

Plaintiff further testified he is suing Major Butcher because she signed off on his Step 1 grievance but upheld the finding of guilty; therefore, she knew the circumstances of the incident and failed to correct the disciplinary action.

He also testified that he is suing Warden Oliver because Plaintiff wrote him letters advising him of staff misconduct, but he has done nothing.

He stated that he is suing all of these individuals because they perpetrated a violation of his due process rights.

In addition, Plaintiff testified he is suing Substitute Counsel Smith because she should have said more in his defense and therefore provided ineffective assistance of counsel.

Warden Dewberry testified that the records available to him were limited, but there was no record of the disciplinary hearing in Plaintiff's records. It was removed when the disciplinary case was overturned. He described the disciplinary hearing process, whereby the Disciplinary Hearing Officer admits non-frivolous evidence, and noted that if the charging officer stated the existence of mitigating evidence, it would lead to a disciplinary case being overturned, as here. He also testified that during a fight inside a Unit, the Incident Command System provided for protocol and radio contact procedures so guards know of a fight and the participants cannot be hidden. Cameras record the participants and confidential informants are often used to obtain a "preponderance of the evidence as to who was involved." He testified that if there is still uncertainty as to who was the

4

aggressor, both would probably be placed in pre-hearing detention. If there is only one officer in the area at the time an altercation starts, as Officer Johnson was in this case, he would probably get hurt if he tried to intervene. Therefore, officers are trained to start the Incident Command System and get help.

Warden Dewberry also testified that the Safe Prisons Policy was instituted during the Clinton Administration with a goal of zero institutional sexual assaults, incidents of extortion and other offenses. If a fight is reported, the policy says to write up both participants. However, the Disciplinary Hearing Officer is supposed to sort out the truth of the incident. If he makes a mistake, the appeals process is supposed to correct it. In any event, Warden Dewberry testified, a person cannot be prosecuted just for making a Safe Prisons report.

Nurse Maxwell testified that on the day of the incident, Plaintiff underwent a pre-segregation lockup physical, showing contusions and small abrasions where he claimed he had been hit. A follow-up exam was conducted on December 20, at which Plaintiff's symptoms were noted as improved and he was issued Tylenol.

Regional Grievance Coordinator Lively testified that the records she had did not include an actual record of the disciplinary hearing, but that a different document referred to the hearing and noted that it had been graded a major case but only minor punishment was assigned, limited to one day each of cell and property restrictions. She also testified that Plaintiff had exhausted the claims in his complaint. She submitted his grievance, classification and medical records for review.

Plaintiff agreed that the Court could review his records in connection with this lawsuit. He was also concerned that a major case might affect his eligibility for parole and that he just wanted to be left alone. He consented to magistrate judge jurisdiction in his case over all matters.

5

## II. DISCUSSION AND ANALYSIS

To state a constitutional claim for relief under § 1983, a plaintiff must allege a right secured by the Constitution or the laws of the United States and a violation of that right by one or more state actors. *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 200 (5th Cir. 1994). To be a state actor subject to liability under Section 1983, the defendant must act "under color of any statute, ordinance, regulation, custom, or usage, of any State of Territory or the District of Columbia." 42 U.S.C. § 1983. "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941)). The Supreme Court has formulated a two-part approach to the issue of state action:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible . . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982). In addition, "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lemons v. Swann*, 412 Fed. Appx. 672, 673 (5th Cir. 2011) (per curiam) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990)).

First, with regard to Plaintiff's due process right claims against Major Fisher, who ordered the disciplinary proceeding against Plaintiff, and Captain King, who was the Disciplinary Hearing

Officer, the Supreme Court has historically held that the due process clause is applicable to disciplinary proceedings where a prisoner is threatened with a loss of good time or the imposition of solitary confinement. *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). The Court held that inmates must be afforded written notice of the claimed violation at least twenty-four hours before a disciplinary hearing, a written statement of the fact finders as to the evidence relied on and reasons, and the right to call witnesses and present documentary evidence where such would not be unduly hazardous to institutional safety or correctional goals. *Id*. at 564-66.

The Supreme Court subsequently placed severe limitations on challenges to disciplinary cases in *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). The Court concluded that the federal judiciary had gone too far in extending due process rights as first articulated in *Wolff v. McDonnell*, *supra*. The Court retreated from its earlier conclusion that due process rights must be accorded to inmates before placing them in solitary confinement. *Sandin*, 515 U.S. at 485. The Court referred to its discussion in *Wolff* regarding solitary confinement as "dicta." *Id.* The Supreme Court went on to hold that "Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at 486. The Court concluded that Conner did not have a "protected liberty interest that would entitle him to the procedural protections set forth in *Wolff*. The regime to which he was subjected as a result of the misconduct hearing was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id.* at 487. Absent atypical punishment, a prisoner does not have a basis for a federal lawsuit concerning a disciplinary action.

The Fifth Circuit has applied *Sandin* to a number of situations. Punishment consisting of placement in administrative segregation or the loss of the opportunity to earn good time is not enough to trigger the protection of the Constitution. *Luken v. Scott*, 71 F.3d 192, 193-94 (5th Cir.

7

1995) (per curiam), *cert. denied*, 517 U.S. 1196, 116 S. Ct. 1690, 134 L. Ed. 2d 791 (1996). The loss of the opportunity to earn good time will not trigger the protection of the Constitution even when an inmate is eligible for mandatory supervision. *Malchi v. Thaler*, 211 F.3d 953, 958-59 (5th Cir. 2000). The imposition of commissary and cell restrictions likewise will not trigger the protection of the Constitution. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). The loss of good time will not support relief to the extent that it adversely affects parole eligibility. *Sandin*, 515 U.S. at 487. However, the loss of good time will trigger the protection of the Constitution if, and only if, a prisoner is eligible for release on mandatory supervision. *Madison*, *supra*, 104 F.3d at 769.

Here, Plaintiff does not allege that he was denied any of the rights to notice, a written statement of the evidence relied upon, or the right to call witnesses. In fact, he cites in his complaint and referred during the *Spears* hearing to the notice he was given; he quoted excerpts from the report stating the evidence Captain King relied upon in determining his guilt; and had his counsel substitute read a witness statement into the record, which ultimately aided in overturning the disciplinary case. Furthermore, the only punishment he was awarded was one day each of cell and property restrictions, neither of which implicate a liberty interest rising to a constitutional violation. Therefore, there was no due process violation in his either being referred to a disciplinary proceeding or in the proceeding itself.

Second, regarding Plaintiff's claim against Major Butcher, he contends that there was a due process violation because Major Butcher knew of the circumstances and failed to correct them. However, "a prisoner does not have a constitutional right to a grievance procedure at all, and he has no due process liberty interest in having his grievances resolved to his satisfaction." *See Smith v. Cooper*, 2011 WL 3115850, at *2 (W.D. La. June 15, 2011) (citing *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005); *Staples v. Keffer*, 419 Fed. Appx. 461, 463 (5th Cir. 2011)). Therefore,

Plaintiff's complaint that Major Butcher did not answer his grievance to his satisfaction does not state a constitutional violation. *Id*.

Third, Plaintiff's claim against Warden Oliver is based on his allegation that he informed the Warden by letter of unspecified "staff misconduct" and the Warden did not correct the situation. Even assuming that the "staff misconduct" related to the other claims in this lawsuit, Plaintiff has failed to state a claim upon which relief may be granted against the Warden. In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates the defendant's participation in the alleged wrong. *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Even giving full credit to Plaintiff's allegation of knowledge, Warden Oliver did not participate in the acts that Plaintiff alleges in this case. He was sued because of his supervisory role. However, the doctrine of *respondeat superior* does not apply in § 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978); *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990). Under 42 U.S.C. § 1983, supervisory officials are not liable for subordinates' actions on any vicarious liability theory. In fact, the Supreme Court recently held that the term "supervisory liability" in the context of a § 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, - - - U.S. - - - -, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). There, the Supreme Court rejected an argument that government officials may be held liable because they merely had knowledge or acquiesced in their subordinate's misconduct. *Id*. As a result of *Iqbal*, courts have questioned whether supervisory liability remains an option at all in § 1983 cases. *See Dodds v. Richardson*, 614 F.3d 1185, 1194-95 (10th Cir. 2010); *Parrish v. Ball*, 594 F.3d 993, 1001 n.1 (8th Cir. 2010).

The United States Court of Appeals for the Fifth Circuit has not yet interpreted this holding

of *Iqbal*. Nonetheless, under existing Fifth Circuit jurisprudence, a supervisor may only be held liable if one of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008); *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Neither of these two conditions contradict *Iqbal* but are consistent with the Supreme Court's holding that mere knowledge or acquiescence is insufficient to create supervisory liability in the § 1983 setting.

Here, Plaintiff's allegations do not satisfy either condition. This supervisory Defendant can be held liable only to the extent that he personally engaged in misconduct. *See Johnson v. Thaler*, 2011 WL 2433623, at *3 (E.D. Tex. May 18, 2011). All Plaintiff has alleged is that he wrote them letters of complaint. That is insufficient to state a claim against Warden Oliver.

Finally, Plaintiff contends that Ms. Smith violated his Sixth Amendment right to effective assistance of counsel. However, that is not a proper claim against a counsel substitute for representing a prisoner during a disciplinary hearing. Defense attorneys may not be liable in a civil rights lawsuit. *See Briscoe v. LaHue*, 460 U.S. 325, 329 n.6, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983); *Slavin v. Curry*, 574 F.2d 1256, 1265 (5th Cir. 1983), *overruled on other grounds by Sparks v. Duval County Ranch Co., Inc.*, 604 F.2d 976 (5th Cir. 1979). A counsel substitute in a prison disciplinary proceeding has the same purpose as a defense attorney in a criminal case and thus cannot be sued in a civil rights lawsuit. *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (per curiam) ("The role of public defender . . . is analogous to the role of counsel substitute. Both are advocates for their clients. Both fulfill their roles in an adversarial system. We therefore hold that the actions of counsel substitute in a prison disciplinary hearing are not actions under the color of state law.").

In addition, it became clear during the *Spears* hearing that Plaintiff's assigned punishment from the disciplinary hearing was one day each of cell and property restrictions. It is unclear whether he served those days before his disciplinary case was overturned, but even if he did, they do not rise to the level of an injury cognizable under 42 U.S.C. § 1983. *See* discussion *supra*. Actual injury is a prerequisite for maintaining a lawsuit under § 1983. *Lemons*, 412 Fed. Appx. at 673.

On those bases, Plaintiff's complaint does not state a claim upon which relief may be granted. It is therefore

**ORDERED** that Plaintiff's complaint is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted and as frivolous pursuant to 28 U.S.C. § 1915A(b)(1). It is further

**ORDERED** that all motions not previously ruled on are hereby **DENIED**.

So **ORDERED** and **SIGNED** this **6** day of **October, 2011.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE